LANTERN HILLS CONSERVANCY
DISTRICT, Petitioner,

v.

INDIANA STATE BOARD OF TAX
COMMISSIONERS, Respondent.

No. 49T05–8703–TA–00014.

Indiana Tax Court.

Oct. 22, 1987.

Karl J. Stipher, Judith E. Overturf, Harrison & Moberly, Jerry M. Burton, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Marguerite M. Sweeney, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Lantern Hills Conservancy District, petitioned the Respondent, State Board of Tax Commissioners, for the authority to issue bonds for the construction of sewers. The remonstrators filed objections on the grounds that the bond issuance was unnecessary or excessive. The State Board denied the petition and this appeal followed.

The residents of Lantern Hills were in need of a sewer system. The City of Indianapolis Department of Public Works (DPW) sought federal funds for construction of sewers, but failed to meet appropriate deadlines. In 1984, the DPW hired an engineering firm to design a sewer installation plan to be constructed at the expense of the residents through the issuance of Barrett Law bonds. Despite the objections of many residents regarding the accuracy and cost of the proposed sewer project, the DPW approved the plan. Sixty-three percent of the residents then petitioned the Circuit Court of Marion County to establish a conservancy district under the Indiana Conservancy Act, IND. CODE 13-3-3-1 *et seq.*

On January 24, 1986, the circuit court ordered the Conservancy District established. On July 14, 1986, the Conservancy District filed a petition under IC 6-1.1-20-3, seeking authority to issue bonds for the construction of the sewers. Ninety-five signatures were certified for the bond issue. In August 1986, a petition against the bond issue, certified to have 83 signatures, failed to defeat the bond issue under IC 6-1.1-20-4(b). In August 1986, ten or more taxpayers filed a petition objecting to the bond issue because it was unnecessary or excessive under IC 6-1.1-20-5 alleging:

1. That the issuance of bonds by the Lantern Hills Conservancy District is unnecessary because the City of Indianapolis is willing to install the sewers in the proposed district.

2. That said issuance of bonds is excessive in that the organizers and directors of the Lantern Hills Conservatory District informed the residence [sic] of said district that the sewer would be put in at a cost not to exceed $850,000.

3. That the interest rate of nine per cent (9%) is not fully determined and is in excess of the amount of interest the taxpayers of Marion County would have to pay under the Barrett Law.

The State Board, by its hearing officer Bill Carter, held a hearing on September 24, 1986. Carter recommended disapproval of the bond issue. He concluded that "the need for a conservancy district and the need for a bond issue do not exist, since the [City] has existing plans for sewer installation in Lantern Hills." On February 25, 1987, the State Board found for "the petitioners in opposition and [disapproved] the incurring of an indebtedness by the issuance of general obligation bonds."[1]

The issues before this Court are:
1) Whether the State Board may gather additional evidence under IC 6-1.1-30-12 without allowing the parties an opportunity to explain and rebut such evidence;
2) Whether the State Board's scope of inquiry under IC 6-1.1-20-5 is limited by the provisions of the Indiana Conservancy Act; and
3) Whether the State Board's decision to disapprove the bond issue is supported by substantial evidence and is according to law.

The Conservancy District contends that the State Board's decision was not supported by substantial evidence because most of the evidence considered by State Board was outside the proper scope of inquiry and was obtained in violation of the Conservancy District's due process rights under IC 6-1.1-30-12.

The State Board contends that it had the authority to obtain *ex parte* evidence, all of which was within the proper scope of inquiry, and that the decision was supported by substantial evidence.

"[T]he reviewing court must go no further than to examine the propriety of the agency's facts as the agency found them and the propriety of the agency's order in light of the facts found." *State Board of Tax Commissioners v. Gatling Gun Club, Inc.* (1981), Ind.App., 420 N.E.2d 1324, 1328. The same standard is used in both stages of review: factual findings are to be set aside only if the State Board's decision is "arbitrary, capricious, an abuse of discre-

1. The bonds sought to be issued are revenue bonds; "general obligation bonds" is a misstatement.

tion, unsupported by substantial evidence, or in excess of statutory authority." *Id.* at 1329.

The hearing officer, Bill Carter, the State Board Chairman, William Long, and the State Board Commissioner, Gordon McIntyre, were involved in *ex parte* communications with various City officials. Almost all of the *ex parte* contacts took place after the hearing on September 24, 1986. Gordon McIntyre merely spoke to unidentified persons at the DPW to verify the City's position on the acceptance of the sewer project.

Bill Carter spoke twice to Jeffrey Sirmin, an attorney in the City–County Legal Division who represented DPW. They discussed the City's plans with respect to sewer costs. After Carter received the Conservancy District's updated district plan from the Indiana Department of Natural Resources, he met with Sirmin again to allow Sirmin to review it. The district plan's shortcomings were addressed in Barbara Gole's letter to Bill Keller, who was the Conservancy District's sewer engineer. A copy of this letter was sent to Carter.

Carter spoke to Barbara Gole, DPW's director, on several occasions. Knowing little about sewer construction or conservancy districts, Carter initially sought background information. Carter and Gole discussed several subjects, among them: the City's conditions for acceptance of a sewer project; the DPW's concerns about a conservancy district building its own sewer; and the Conservancy District's motivation to create the conservancy district. Gole showed Carter her mail from the sewer project's opposition. Carter also reviewed the Conservancy District's plans with Gole's staff.

William Long spoke to Dee Revnyak, DPW's sewer engineer, about the status of the Conservancy District's plans. He also spoke to Barbara Gole about the City's plans to proceed under the Barrett Law if the Conservancy District's project was not accepted. They discussed the Conservancy District's legal authority to dedicate the project, as well as the extent of the Conservancy District's access to tax dollars.

██ The State Board contends that evidence obtained outside the hearing may be considered under IC 6–1.1–30–12 regardless of whether interested parties are given an opportunity to review and rebut such evidence. In *State Board of Tax Commissioners v. Oliverius* (1973), 156 Ind.App. 46, 294 N.E.2d 646, the Court of Appeals decided that such a construction of that statute would constitute a denial of due process. The court did not prohibit the State Board from ever considering *ex parte* evidence under any conceivable circumstance. *Id.*, 294 N.E.2d at 651 n. 4. *See*, Annotation, *Administrative Decision of Finding Based on Evidence Secured Outside of Hearing and Without Presence of Interested Party or Counsel*, 18 A.L.R.2d 552 (1951). Nevertheless, the court conditioned such an occurrence on the premise that such evidence would be made available to the parties to allow them the opportunity to review and rebut any *ex parte* evidence.[2] *Oliverius*, 294 N.E.2d at 651 n. 4. This Court finds the State Board's method of obtaining information outside the hearing to be arbitrary and capricious. All parties should have an opportunity to review and rebut any evidence obtained by the State Board outside of hearing pursuant to IC 6–1.1–30–12.

In deciding whether a particular bond issue is unnecessary or excessive under IC 6–1.1–20–5, the State Board's scope of inquiry into certain factual issues is necessarily limited by the Indiana Conservancy Act, IC 13–3–3–1 *et seq.* When two statutes are apparently inconsistent and yet can be construed to give effect to both, the court's duty is to do so. *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212, 1219. That is may the determination of the State Board as to necessity and excessiveness under IC 6–1.1–20–5 overrule a determina-

---

**2.** While neither party contends that the Conservancy District is not a person entitled to the protection of the due process clause of the 14th amendment to the United States Constitution, this Court has some concern in this regard. Such concern notwithstanding, the propriety of the State Board's *ex parte* factfinding cannot be sustained as a matter of law under *Oliverius*.

tion made by the circuit court under the Indiana Conservancy Act?

■ The Indiana Conservancy Act provides that certain factual matters are for the consideration of the circuit court after review and action by the Conservancy District board of directors and the Indiana Department of Natural Resources. Property owners who object to the establishment of the district or to the district plan have ample opportunity to be heard at several stages during the statutory process. The remonstrators may not use the hearing under IC 6–1.1–20–5 to redetermine factual matters which have already been decided under the Indiana Conservancy Act.

■ The record indicates that the State Board's concerns about the feasibility of the Conservancy District's district plan precipitated the State Board's *ex parte* inquiries. As a general rule, such an inquiry, if properly handled, would be appropriate if the district plan was not yet finally approved by the circuit court under IC 13–3–3–54. Once the district plan receives court approval, however, questions concerning its feasibility would be outside the scope of the State Board's inquiry because the conservancy district then has a statutory duty to implement the final district plan. *See In re Middlefork Watershed Conservancy District* (1987), Ind.App., 508 N.E.2d 574, 578–79. Any conclusions drawn by the State Board about an unapproved district plan must also be tempered by consideration of IC 13–3–3–50, which provides that detailed construction drawings, specifications, and refined cost estimates are not necessary as part of the district plan. Since here the plan had not yet received circuit court approval, the State Board's scope of inquiry was proper. The State Board could have conceivably declared the bond issue unnecessary or excessive because there was no approved plan. The basis, however, for the State Board's denial was its judgment as to the need for a conservancy district.

Next, the Court must determine the propriety of the decision in light of the facts properly before the State Board. Neither Jeffrey Sirmin, nor Dee Revnyak, nor Bar-

bara Gole testified at the hearing. No probative evidence of the City's willingness to do the project and issue Barrett Law bonds was presented at the hearing. The testimony against the bond issue was from five Lantern Hills residents. Their testimony went to the matter of whether the Conservancy District itself was necessary, not whether the bond issue was necessary.

■ The substantial evidence standard requires that the record contain evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *State Board of Tax Commissioners v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723. While the testimony at the hearing might have supported a finding that the creation of the conservancy district was unnecessary, that particular factual issue has already been decided by the Marion Circuit Court under IC 13–3–3–32. The establishment of the Conservancy District may not be collaterally attacked in any proceeding. IC 13–3–3–32. If the establishment of the Conservancy District itself may not be attacked, then it follows that the State Board may not support a finding that the bond issue is unnecessary by finding that the conservancy district is unnecessary. Since the basis of the State Board's decision was that the Conservancy District was not necessary, the Court finds that decision was not supported by substantial evidence.

The State Board did not have substantial evidence from which to find that the bond issue was excessive. The only evidence supporting this finding concerned the City's willingness to proceed with the project. This evidence was not properly received. Therefore, the Court finds, as a matter of law, that the State Board's finding that the bond issue was excessive was not supported by substantial evidence.

In summary, the Court finds that although the State Board's scope of inquiry under IC 6–1.1–20–5 is limited by the Indiana Conservancy Act, no plan had yet been approved by the circuit court and thus, the scope was proper. Nevertheless, the evidence used to support the State

Board's determination disapproving the bond issue was improperly obtained and thus, the determination is arbitrary and capricious. Moreover, the State Board's finding that the bond issue was unnecessary and excessive is not supported by substantial evidence.

The determination of the State Board disapproving the issuance of the bonds is reversed and this cause is remanded to the State Board for further proceedings consistent with this opinion.

ORDERED this 22nd day of October, 1987.